Carl WIDMER *v.* Raymond F. WIDMER, Executor of the
Estate of Walter Widmer

87-136                                               737 S.W.2d 457

Supreme Court of Arkansas
Opinion delivered October 12, 1987

*Appellant*, pro se.

*Hardin, Jesson & Dawson*, by: *Bradley D. Jesson*, for
appellee.

DAVID NEWBERN, Justice. Walter Widmer died testate,
leaving 42½% of his estate to his son, Raymond F. Widmer, who
was named executor. He also left 42½% of the estate to another
son, Carl Widmer, who is the appellant. The remaining 15% of
the estate was left to the children of Raymond F. Widmer. This
appeal is from orders of the court surrounding the disposition of a
parcel of land which was property of the estate. Carl Widmer
contends that Raymond F. Widmer was obliged to allow him a

right of first refusal to purchase the land as part of the obligation of an executor, who is also a devisee, to deal in good faith with another devisee. Carl Widmer asks us to hold the court erred in permitting a sale of the land without requiring that he have been allowed a right of first refusal. He also contends that Ark. Stat. Ann. § 62-2016 f. (Repl. 1971), which permits a fiduciary to appeal on behalf of the estate without supersedeas bond, is unconstitutional, and thus the court erred in requiring that he post a bond to stay the sale of the land pending appeal. Finally, he contends the court erred in not vacating the sale of the land because the purchaser has engaged in "interference." We find no merit in any of these arguments, and thus we affirm.

The brothers were unable to agree on the manner of disposing of the land in question. On June 19, 1986, the court directed Raymond to make written proposals to Carl, within fifteen days, which Carl would then be required to answer within fifteen days. Raymond then was to have five days to respond to Carl's answer. If the brothers were unable to agree within the stated time frame the court proposed to reinstate his prior order that the land be sold at public auction.

On July 1, 1986, Raymond wrote to Carl and described three proposals. First, he suggested he (Raymond) could seek offers from "unrelated" third parties and sell to the highest bidder. Second, he suggested that they agree on a mutually acceptable cash sale price and that either Carl buy the interest of Raymond and his children or that Raymond buy Carl's interest at that price. Third, he suggested that Carl could fix a price and give Raymond and his children the option of buying or selling the land at that price, or that Raymond would fix a price and give Carl the option of buying or selling at that price.

On July 16, 1986, Carl wrote an essentially negative letter to Raymond, complaining that Raymond had not stated any offers he had received for the property and he had not otherwise mentioned "dollars and cents."

Raymond responded on July 24, 1986, that the only remaining alternative seemed to be to continue to seek offers from third parties and sell for the best offer. He noted that he had received an offer of $400,000, and asked Carl to advise him if Carl knew of anyone willing to pay more.

On August 2, 1986, Raymond accepted an offer from Robert Westphal to purchase the land for $400,000. On August 5, 1986, a realtor named Ernest Westfall offered $405,000 on behalf of his client, Chris Whitt. On August 13, 1986, Raymond petitioned the court to be allowed to sell the land to Robert Westphal for $400,000 cash, but informed the court of the later, higher offer. On August 18, 1986, Carl petitioned the court to require that the land be sold to him (Carl) for $400,000 contingent upon his ability to obtain financing. He also asked the court to establish how much of the $400,000 total price he would have to pay for the interest of Raymond and Raymond's children.

Raymond responded to Carl's petition by objecting on the basis that Carl was not making a timely offer on the land, and the contingency would cause delay. The court denied Raymond's petition to be permitted to sell the land to Robert Westphal, and it denied Carl's petition to be allowed to purchase at $400,000 subject to obtaining financing. The court, instead, ordered that the land be sold at public sale. Carl then moved to vacate the order directing a public sale, and the motion was overruled. The property was sold at public sale to Chris Whitt, who was the highest bidder, at a price of $465,000. The sale was confirmed by the court over Carl's objection, and later, Carl's motion to vacate the confirmation of the sale was overruled.

## 1. Executor's good faith

Carl's first argument is that the court erred in refusing to require that the land be sold to him at $400,000. He contends Raymond did not exercise the "ultimate good faith" toward him we have held to be required of an executor dealing with other heirs. *Price* v. *Price*, 258 Ark. 363, 527 S.W.2d 322 (1975). The argument here boils down to a contention that Raymond was obliged to name a price and give Carl the right of first refusal at that price before proceeding to sell the land to a third party. Carl cites no authority for that proposition, and we know of none. Nothing in the court's order of June 19, 1986, required that Raymond name his price for the land. The proposals made in Raymond's letter to Carl of July 1, 1986, were palpably reasonable and demonstrated a fair effort to keep the land in the hands of one of the brothers. Neither at the trial court nor here has it been demonstrated that Raymond acted in other than "ultimate good

faith," and we find no error in the trial court's refusal to require the land to be sold to Carl for $400,000.

## 2. Supersedeas bond

The point argued here is that the court erred in requiring Carl Widmer to post a bond superseding the court's order that the land be sold at public sale. He argues that Ark. Stat. Ann. § 62-2016 f. (Repl. 1971) permits a fiduciary, such as an executor, to obtain a stay without bond and that this violates Carl's right to due process and equal protection under the law, citing *Stokes* v. *Stokes*, 271 Ark. 300, 613 S.W.2d 372 (1981), in which we declared certain gender-based provisions of our probate code unconstitutional.

It is enough to say that the argument that the statute is unconstitutional was not made to the trial court. Even arguments based on constitutional claims must be raised in the trial court or they cannot be reviewed on appeal. *Morris* v. *Garmon*, 285 Ark. 259, 686 S.W.2d 396 (1985); *Pope County* v. *Streett*, 284 Ark. 416, 682 S.W.2d 749 (1985).

## 3. Interference

Carl Widmer contends that the person who purchased the land at public sale, Chris Whitt, interfered in some manner in the proceedings, thus forcing the sale to occur, and thus it was error for the court to conduct and confirm the sale. There is neither citation of authority nor convincing argument in favor of this proposition that the court erred, thus we decline to consider the argument. *Shannon* v. *Anderson*, 269 Ark. 55, 598 S.W.2d 97 (1980); *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

Affirmed.