Daniel Anthony RAYMOND *v.* STATE of Arkansas

CR 02-1202                                    118 S.W.3d 567

Supreme Court of Arkansas
Opinion delivered September 25, 2003

*Matthews, Campbell, Rhoads, McClure, Thompson & Fryauf, P.A.*, by: *Edwin N. McClure*, for appellants.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Daniel Raymond appeals from a conviction for the obstruction of shooting, hunting, fishing, or trapping activities in violation of Arkansas Code Ann. § 5-71-228 (Repl. 1997), a misdemeanor. Raymond was sentenced to thirty days' confinement, which was suspended; a five-hundred-dollar fine, which was suspended; and one hundred and fifty dollars in court costs. He raises two points on appeal: (1) that the circuit court erred in finding § 5-71-228 to be constitutional under the United States Constitution; and (2) that the circuit court erred in finding that he violated § 5-71-228. The State argues that both of Raymond's arguments are procedurally barred for failure to develop the issues raised on appeal before the circuit court. We agree with the State and affirm the circuit court.

On April 4, 2002, Raymond was convicted in the Elkins District Court of obstruction of shooting, hunting, fishing, or trapping activities in violation § 5-71-228. He appealed the matter to the Washington County Circuit Court. On August 7, 2002, he filed a motion to dismiss the State's charge due to the unconstitu-

tionality of § 5-71-228. In his motion, he asserted that the statute violated both his federal and state right to free speech under the respective constitutions.

On August 21, 2002, Raymond was tried before the circuit court. Testimony presented to the court revealed that on the first day of deer season, November 10, 2001, Markus Lee Surber was hunting on Steve Wilson's property. Surber testified that around daylight, Raymond came onto Wilson's property within twenty yards of the deer stand in which Surber was positioned. Raymond was riding a four-wheeler and blowing a whistle. Surber testified that Raymond did this every thirty minutes. On the second or third day of the season, Surber also testified that he heard loud music coming across the property from the same direction Raymond had traveled earlier that week. Later the same day, Surber heard and saw Raymond fire three shots from a gun on Wilson's property. Surber testified that this was the first time in ten years that his group had not killed a deer on the first day of deer season on Wilson's property.

Alan Scott Wilson, Jr., also testified for the State. He stated that on the first day of deer season, while positioned in the northeast corner of Steve Wilson's property, he heard nine shots fired from the direction of Raymond's pasture which was located behind him. Forty-five minutes later, Wilson heard a four-wheeler approach and saw a person on the four-wheeler blowing a whistle. Later, while walking, Wilson encountered Raymond and realized that the person he had seen earlier was Raymond. Even later that day, Wilson testified that he heard Raymond fire "a couple of shots" at Surber and him, while Raymond was on his four-wheeler. Wilson also testified that he did not kill a deer on that first day of the season.

Steve Wilson testified for the State. He stated that he had lived on his property in West Fork for twenty years. He testified that on November 11, 2001, he heard Raymond again riding his four-wheeler on Raymond's own property and firing a pistol. Steve Hall confirmed that while walking towards his father-in-law's house, he saw Raymond, on Raymond's own property, riding his four-wheeler and blowing a whistle.

Sergeant Scott Young of the Washington County Sheriff's Office testified that he spoke with Raymond on November 12, 2001, and advised him of the law prohibiting persons from harassing hunters. Sergeant Young stated that Raymond admitted

blowing a whistle and that he "admitted to riding his four wheeler around in order to scare game away so they wouldn't be out there hunting." Sergeant Young added that Raymond did not believe his actions were illegal and planned on continuing his actions every day of deer season in order to protect his livestock, which was in danger of being harmed by the hunters.

Raymond took the stand in his own defense. He described his property as surrounding Steve Wilson's land on three sides. He stated that on November 10, 2001, he was patrolling his land on a four-wheeler to keep people from trespassing on his land. He stated that he used a four-wheeler to do that because he has a metal knee. He further testified that he never crossed onto Steve Wilson's property. He admitted to blowing a whistle and firing shots from a .22 calibre pistol to protect his livestock as well as the children, his mother, his wife, and himself, living on his property. He added that he wanted to let hunters know that he was there, so he would not be shot.

At the close of all the evidence and following closing arguments, the circuit court found that § 5-71-228 was constitutional. The court further found that Raymond was guilty of violating the provisions of the statute.

## I. Sufficiency of the Evidence

■ Raymond argues that the circuit court incorrectly determined that he violated § 5-71-228 because there was insufficient evidence to establish his guilt. Due to double jeopardy considerations, we consider the insufficiency issue first. See *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). He contends that (1) he never left his own property, and (2) his activities that day were not intended to "obstruct or impede" the hunters. Thus, he claims, the State failed to establish the element of wilfulness. We hold that the issue is not preserved for our review.

Arkansas Rule of Criminal Procedure 33.1 provides, in pertinent part:

> (b) In a nonjury trial, if a motion for dismissal is to be made, it shall be made at the close of all the evidence. The motion for dismissal shall state the specific grounds therefor. If the defendant moved for dismissal at the conclusion of the prosecution's evidence, then the motion must be renewed at the close of all the evidence.

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal . at the close of all the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

Ark. R. Crim. P. 33.1 (2003).

This court recently interpreted Rule 33.1 in the context of a bench trial in *State v. Holmes*, 347 Ark. 689, 66 S.W.3d 640 (2002). In *Holmes*, the appellant moved for a directed verdict following the close of the State's case during his bench trial but failed to renew the motion at the close of all the evidence.[1] The trial court convicted Holmes on two of the three charges but later set aside his convictions. The State appealed, arguing that the trial court erred in granting Holmes's motion to set aside the verdicts as he had waived any question pertaining to sufficiency of the evidence by failing to make the appropriate motion at the close of all the evidence. We agreed and said:

> In the present case, Holmes's motion for directed verdict was not made at the close of all the evidence. Rather, it was included during Mr. Kearney's closing argument, as quoted above. Under *Etoch, supra*, we adhere to a strict interpretation of our rules, and we hold that Holmes did not comply with Ark. R. Crim. P. 33.1(b) and (c). In order to preserve the question of the sufficiency of the evidence, Holmes should have made his motion for directed verdict at the close of all the evidence before closing arguments. Because of his failure to do so, we hold that the trial court erred in considering

---

[1] This court amended Rule 33.1 to refer to motions to dismiss rather than motions for directed verdicts in connection with bench trials by *per curiam* order dated April 8, 1999. *See In Re: Rule 33.1, Rules of Criminal Procedure*, 337 Ark. Appx. 621 (1999).

his motion to set aside the verdict for insufficient evidence, and we reverse and remand with instructions to reinstate Holmes's convictions and sentence.

347 Ark. at 693, 66 S.W.3d at 643.

█ In the instant case, Raymond failed to move to dismiss the State's case based on insufficient evidence at the close of all the ·evidence, as required by Ark. R. Crim. P. 33.1. In order to preserve the question of sufficiency of the evidence, Raymond was required to move to dismiss prior to closing arguments. Because he failed to do so, this court is precluded from reviewing his sufficiency claim.

## II. Constitutional Issues

Raymond next contends that § 5-71-228 is unconstitutional due to its vagueness and overbreadth. We begin by quoting § 5-71-228(a):

> (a) It is unlawful for any person to willfully obstruct or impede the participation of any individual in the lawful activity of shooting, hunting, fishing, or trapping in this state. Provided, that nothing in this section shall prohibit a landowner or lessee from exercising his or her lawful right to prohibit hunting, fishing, or trapping on his or her land, or from exercising any other legal right.

Ark. Code Ann. § 5-71-228(a) (Repl. 1997).

█ This court must first consider whether the issues raised on appeal were preserved for our review, because the State has specifically raised that issue. It is well settled that an appellant must raise and make an argument at trial in order to preserve it on appeal. *See, e.g., Halford v. State,* 342 Ark. 80, 27 S.W.3d 346 (2000). This is true even when the issue raised is constitutional in nature. *See Howard v. State,* 348 Ark. 471, 79 S.W.3d 273 (2002). If a particular theory was not presented at trial, the theory will not be reached on appeal. *See Ouachita Wilderness Inst., Inc. v. Mergen,* 329 Ark. 405, 947 S.W.2d 780 (1997). Moreover, an appellant must obtain a ruling on his or her argument to preserve the matter for this court. *See Rutledge v. State,* 345 Ark. 243, 45 S.W.3d 825

(2001). The burden of providing a record sufficient to demonstrate error is upon the appellant. *See McGhee v. State,* 330 Ark. 38, 954 S.W.2d 206 (1997).

In the instant case, prior to the bench trial, Raymond filed a motion to dismiss based on the unconstitutionality of § 5-71-228. In that motion, he wrote in pertinent part:

> 2. That [§ 5-71-228] violates the Arkansas Constitution and the United States Constitution.
>
> 3. That the Arkansas Constitution provides, in pertinent part, as follows:
>
>> The liberty of the press shall forever remain inviolate, with free communication of any thoughts and opinions be as one of the invaluable rights of man; and any persons may freely write and publish their sentiments on all subjects, be responsible for abuse of such rights ...
>
> 4. That the Constitution of the United States provides, in pertinent part, as follows:
>
>> Congress shall make no laws respecting the establishment of religion, or prohibiting the free exercise thereof; or bridging the freedom of speech, ...
>
> 5. That the criminal statute under which the Defendant is charged violates his federal constitutional right to free speech and his state constitutional right to free speech.
>
> 6. That the Defendant hereby notifies the Honorable Mark Pryor, Attorney General for the State of Arkansas, of this motion.

At the ensuing bench trial, Raymond's counsel made the following argument before the circuit court:

> ... The statute makes it clear that he has the right to not only prevent hunting on his property but also from exercising his other legal rights. The State's not shown anything he's done if done on his property is something that's illegal. That it's something that's wrong. That's why I think the statute fails for constitutional reasons, Your Honor, and that's the purpose for filing the motion to dismiss. This statute and the State's argument seems to assume that hunting in this state is a right, like a driver's license is a right, but as this Court

is well aware, our supreme court has said no, driving in this state is not a right, it's a privilege, it's a privilege that's granted by the state. When the Court weighs a privilege versus a constitutional right, the scales have to tip in favor of the constitutional right. And for that reason, Your Honor, and the testimony, we would ask that you dismiss the case against Mr. Raymond.

Neither Raymond's motion to dismiss nor the argument of his counsel to the circuit court makes reference to the void-for-vagueness or overbreadth argument. Nevertheless, the circuit court made the following ruling from the bench:

I think that probably it's appropriate to address the constitutional issues raise (sic) by the Defendant first. As I understand the Defendant's motion to dismiss and arguments here today, basically the statute as applied to the Defendant's conduct basically would violate his first amendment free speech rights. Of course, as the attorneys are aware, legislative enactments in this state are presumed to be constitutional and it's incumbent upon the parties alleging an enactment is unconstitutional to prove that the statute is unconstitutional. The statutes are attacked in a number of ways but when these issues are presented as I understand the law four questions should be addressed and first, is the statute unconstitutionally vague. In my judgement in this case it is not. A person of average intellectual capacity would I think conclude, easily conclude, that engaging in this type of activity which has been described here today would impede hunting. Secondly, is it, the statute overbroad. Again, in the situation we have before the Court I think the requirement of the statute that the conduct described in this statute to be a violation must be willful addresses the issue of whether or not the statute itself is overbroad, overly broad, and I think it is not. The third consideration is whether the statute is content neutral. Well, I think the statute applies equally to those who love hunting as well as those who loath hunting, and as a consequence in my judgment the statute is not, the statute is content neutral. Finally, the form (sic) in which the conduct or alleged conduct takes place is of some significance in addressing the constitutionality of the statute of this nature. Clearly, hunting activities do not take place in public forums, hunting obviously takes place out in the country, out in the woods, in nature. And thus in my judgment does not restrict public activity as such. I think it's important to note that the state clearly has a legitimate interest in prohibiting the prescribed conduct inasmuch as clearly a legitimate interest would be safety as well

(sic) promoting tourism and other interests of the state so in my judgment the statute passes constitutional muster and is in fact constitutional.

■ This court has previously held that a general objection by a party who cites to constitutional provisions was not sufficient to preserve constitutional questions presented on appeal. *See Harris v. State*, 320 Ark. 677, 899 S.W.2d 459 (1995). In *Harris*, appellant argued on appeal that the statutory bifurcated trial process was unconstitutional. This court observed that at trial, Harris made a general objection:

> And, if the Court please, it is further respectfully submitted that such statute is unconstitutional and in violation of the Arkansas and Federal Constitutions, particularly, Amendments Five, Six, and Fourteen to the United States Constitution, and similar provisions of the Arkansas Constitution, in that they do not permit the defendant's jury trial as contemplated by the constitutional provisions.

320 Ark. at 685, 899 S.W.2d at 464. We concluded that we could not consider this argument on appeal due to the lack of adequate preservation and said:

> As readily discerned from his objection, Harris failed to preserve at trial the specific constitutional questions he now seeks to advance in this appeal. This court does not consider arguments which are not supported by compelling argument or citations of law. *Kiefer v. State*, 297 Ark. 464, 762 S.W.2d 800 (1989). We do point out, however, that this court recently fully addressed and rejected the *ex post facto* argument in *Williams v. State*, 318 Ark. 846, 887 S.W.2d 530 (1994).

*Id.*, 899 S.W.2d at 464.

Similarly, in *Drummond v. State*, 320 Ark. 385, 897 S.W.2d 553 (1995), this court reviewed the appellant's conviction for underage driving while intoxicated. The appellant argued that one section of the underage DUI statute, which mandated public service work, was unconstitutional. The city attorney conceded before the trial court that it was probably unconstitutional but also contended that it could be severed from the rest of Act 863 of 1993, now codified at Ark. Code Ann. §§ 5-65-301—5-65-311. After finding the appellant guilty of underage DUI, the circuit

court "declared the public service section to be unconstitutional, though no evidence or argument was presented on this issue, but found the balance of Act 863 to be constitutional." 320 Ark. at 387, 897 S.W.2d at 554. On appeal, the appellant argued that the public service section of the Act was unconstitutional and that such a defect vitiated the Act in its entirety. Regarding the constitutionality, this court said:

> We expressly do not consider the constitutionality of the public service penalty — § 5-65-306 — in this appeal. The State Attorney General pointedly refused to concede that the section is unconstitutional in its brief on appeal. Furthermore, we will not strike down a legislative act on constitutional grounds without first having the benefit of a fully developed adversary case. Full development is lacking in this case, and we take no position on the constitutional question.

*Id.* at 389, 897 S.W.2d at 555.

This court held to the same effect in *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996). In *Quirk*, the issue was medical malpractice, and the infant's guardians asserted that Ark. Code Ann. § 16-114-207(3) (1987), a part of the Arkansas Medical Malpractice Act, was unconstitutional. The section in question provided that "no medical care provider shall be required to give expert testimony at trial against himself or herself." 323 Ark. at 780, 918 S.W.2d at 144. In our opinion, this court proceeded to set forth each of the arguments on the point which were raised before the trial court. Those arguments consisted of: (1) a brief address by counsel to the trial court during a hearing stating that the statute was unconstitutional and requesting the opportunity to make an argument and prepare a brief if the court was going to rule against the motion; (2) a third amended complaint in which the guardians claimed the section of the Medical Malpractice Act violated equal protection, denied prompt access to the courts, constituted special legislation, violated privileges and immunities, attempted to limit recoveries, and violated the supersession rule; (3) a statement in a response to Quirk's motion-in-limine that the "so-called Medical Malpractice Act is unconstitutional;" (4) a statement during a pretrial hearing restating that the statute is unconstitutional; and (5) the proffer of an order from another case finding the statute was unconstitutional during a hearing on the motion for a new trial. This court noted

that the trial court had said, "I'll hold that it is constitutional." *Id.* at 781, 918 S.W.2d at 145. We further observed that "[t]here [was] no other indication in the abstract that the guardians presented any further argument or brief to the trial court." *Id.*, 918 S.W.2d at 145.

We declined to address the merits of the guardians' constitutionality claim and said:

> We first note that this constitutional issue was not properly briefed and argued to the trial court. *See Prater v. St. Paul Ins. Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987). This Court will not strike down a legislative act on constitutional grounds without first having the benefit of a fully developed adversary case. *Drummond v. State*, 320 Ark. 305, 897 S.W.2d 553 (1995); *see also Whitney v. Holland Retirement Ctr., Inc.*, 323 Ark. 16, 912 S.W.2d 427 (1996). At trial, they merely made conclusory statements that the statute was unconstitutional. This argument is therefore procedurally barred.

*Id.*, at 782, 918 S.W.2d at 145.

■ We view the situation in the present case to be analogous to the cases adduced above. In his motion to dismiss, Raymond summarily stated that § 5-71-228 violated his First Amendment rights to free speech under both the federal and state constitutions. No citation to authority was provided, other than simply a quotation of clauses from both constitutions. Nor was any brief filed in support. Additionally, when prompted by the court for argument on the motion during closing arguments, counsel for Raymond merely stated that what Raymond did was not illegal and that where a constitutional right and privilege were in competition, the constitutional right takes priority. Not only did Raymond fail to cite any authority to the circuit court, but he failed to mention the terms "overbroad" or "void for vagueness." Hence, there was no development of his claims relating to vagueness and overbreadth before the circuit court.

This court is well aware of the fact that despite these lapses on the part of Raymond's counsel, the circuit court did rule on the issues of vagueness and overbreadth. The problem, however, is that the circuit court did not have the benefit of development of the law on these two pivotal issues. What Raymond now presents to this court on appeal, in the form of legal briefs, is a far cry from what the circuit court had at its disposal. Indeed, as has already

been referenced, Raymond never mentioned vagueness or over-breadth, much less developed an argument on either, to the circuit court, and the State was equally reticent on these legal points.

██ We will not address an issue that is fully developed for the first time on appeal. Accordingly, we affirm the circuit court because the constitutional issues raised on appeal were not preserved for our review.

Affirmed.

THORNTON, J., not participating.