Anthony K. RANDLE *v.* STATE of Arkansas

CR 07-490                                    273 S.W.3d 482

Supreme Court of Arkansas
Opinion delivered January 31, 2008

*Ronald C. Nichols,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Anthony K. Randle appeals his conviction for capital murder in the death of Ranson Harrison, for which he was sentenced to life imprisonment without parole. For his sole point on appeal, he claims

that the circuit court's ruling foreclosing him from presenting evidence that cocaine was found in Ranson Harrison's system at the autopsy denied him a fair trial. We disagree, and we affirm.

On Sunday, April 16, 2006, Ranson Harrison was shot and killed outside Hudson's Fish Market in North Little Rock. Randle was eventually arrested and charged with capital murder. At trial, witnesses testified to the following events. On Friday, April 14, 2006, Harrison and Randle were involved in a fight that was witnessed by a large number of people. Randle initiated the argument but was eventually knocked to the ground by Harrison and had to be helped to his feet by a friend. Later that night, Randle accosted Gloria Cole, Harrison's girlfriend, and tried to get her to tell him where Harrison was. Seeing a gun, Cole was frightened and ran to the residence of Hattie and Hubert Nowden, Harrison's mother and stepfather, where she banged on the door. The Nowdens answered, and Randle followed Cole to the porch. After Mrs. Nowden asked his name, Randle left the area.

The next day, Saturday, Harrison went to a friend's house to ask if he could borrow a gun for self-protection. On Sunday, which was the day of the murder and two days after the fight, Cole and Harrison went to a local convenience store together. The couple completed their purchase and went back outside, where they met an acquaintance of Cole's, who asked her to get him a soda. She left Harrison outside and returned to the store for the soda. She returned outside and was handing her acquaintance the soda when she heard three gunshots. She looked up and saw Randle fleeing the scene in a burgundy sport utility vehicle.

There was another witness to the murder, Cherita King, who saw a burgundy or crimson SUV drive up to Harrison. She saw the arm of a male African American reach out of the SUV holding a gun and shoot three or four times. She testified about the clothing worn by the killer but could not identify him as Randle. She saw Harrison run a short distance and fall to the ground. After the SUV left the scene, she ran to give aid to Harrison and called for a neighbor to call 911.

The medical examiner testified the Harrison died of a single gunshot wound to his chest. During the police investigation, suspicion turned to Randle. Police discovered that Randle's sometime girlfriend, Yvonne Armistead, owned a maroon SUV to which she testified Randle could have gotten access. When questioned, Randle admitted to the Friday night fight but claimed to be fishing with two friends at the time of the murder. These

friends initially confirmed his story but later, when confronted with the frequent cell phone calls that had transpired between the three men during the time they were supposedly together fishing, they admitted to fabricating the story to protect Randle from suspicion. Randle was then charged with capital murder.

At a pretrial hearing, the State made a motion in limine to exclude evidence that cocaine was found in the victim's system during the autopsy. The State argued that the evidence would have no relevance, given Randle's general denial defense, except to show the victim as a man of bad character. Defense counsel contested the motion, saying:

> Well, I think it should be brought out, Your Honor, due to the simple fact that the defense — we've made no claim we're going to use it as to him being a bad person. I think that the jurors — I think that is, once again, in the province of the jurors to decide if this man was under the influence or not. It's not going to — I can see where the evidence would go to show that he's a bad person. But what we're dealing with, Your Honor, we've got a number of witnesses who also do cocaine and have done cocaine with him. So, it's a very important part of our case. We're not trying to use it to make him look bad but it is an important part of our case that the autopsy said that he was under the influence. We can impeach witnesses with that, not necessarily him. But, Your Honor, I don't — I think that it would severely prejudice our case where we couldn't get a fair defense if that was said or not.

When the circuit court asked for clarification about the relevance of cocaine in the victim's system, defense counsel answered:

> Well, Your Honor, that would be used to show that this man — basically, it would show that he — it wouldn't show his character or anything. It would show that he was under the influence at this time and also it leaves room for us to impeach other witnesses about, if they're going to testify to this, them being with him. I just — you know — I think this is a province that should be — I should be able to use for the simple fact, Your Honor, for not only impeachment purposes but on other witnesses. I know I can't impeach him but I can use this for other purposes on other witnesses. I mean, if they bring his character into issue — he's a good guy or something like that or he's never done drugs — then I can't use that if its kept out. . . . [W]hat we're saying is this: we've got other witnesses here who — which most of the prosecution witnesses are going to have

something to do with this guy during the — almost — during the time that he got killed or sometime before. And I think that should be allowed for me for impeachment purposes. I don't — I'm not trying to reflect on this guy's character. I mean, that's not what I would want to use it for.

The circuit court granted the State's motion and excluded the evidence "unless that matter is brought out or subject to impeaching some other witness as to what they were doing from time-to-time and whether or not they'd been involved with drugs or someone says that he was not a user. Then, the Court would permit you to delve into that."

At trial, defense counsel did not call any witnesses, but he did cross-examine the State's witnesses. In particular, defense counsel questioned State witness Gloria Cole about her ability to see and recall the events surrounding the murder. Defense counsel also made several attempts to elicit testimony regarding Harrison's and Cole's unemployed and homeless status.

At one point at trial, defense counsel asked Cole whether she smoked crack. This drew an objection from the State, which was sustained. Defense counsel did not make any argument as to why the objection should be overruled; nor did he attempt to question Cole more specifically about her drug use on the day of the murder. At no time during the trial did defense counsel argue that cocaine in the victim's system had become relevant to impeaching a specific witness or relevant to Randle's defense.

The jury found Randle guilty of capital murder. The State had waived the death penalty, and Randle received an automatic life sentence without the possibility of parole.

Randle now contends on appeal that the exclusion of the evidence that the victim had cocaine in his system at the time of the murder denied him his constitutional right to a fair trial and also violated Rules 401, 402, and 403 of the Arkansas Rules of Evidence. The victim's status as an unemployed drug user was relevant, Randle argues, because it supported a theory that the victim was killed by a drug dealer to whom he owed money. Although it is not entirely clear, Randle also appears to assert that the presence of cocaine in the victim's system would have shed light on the similar cocaine intoxication of a major State witness, Gloria Cole, during her trial testimony. Randle asserts that Cole fabricated her testimony about seeing Randle in the maroon SUV at the time of the shooting.

The State counters that Randle's arguments with respect to the admissibility of the toxicological screening for cocaine have not been preserved for appeal. In this regard, the State notes that the claim that a third-party drug dealer was responsible for the murder was not raised at trial. Nor, argues the State, did Randle argue to the circuit court that he was denied his constitutional right to a fair trial. In order to preserve the issue of the admissibility of the cocaine in the victim's system for appeal, the State argues, Randle was required to proffer the evidence that he sought to have admitted. This he did not do. In the absence of a proffer, the State asserts, there is an insufficient record for this court to review, and the issue is simply not preserved.

■ We agree with the State. This court has made it crystal clear that in order to preserve an argument, even one that is constitutional in nature, for appeal, it must be raised at trial. *See, e.g., Davis v. State*, 368 Ark. 401, 409, 246 S.W.3d 862, 869 (2007); *Raymond v. State*, 354 Ark. 157, 162, 118 S.W.3d 567, 571 (2003). As this court has noted, "[i]f a particular theory was not presented at trial, the theory will not be reached on appeal." *Raymond v. State*, 354 Ark. at 162, 118 S.W.3d at 571 (2003); *Rodgers v. State*, 360 Ark. 24, 30-31, 199 S.W.3d 625, 629 (2004) ("A party cannot change his grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial."). Nowhere does the record reveal that Randle presented the circuit court with a theory that the cocaine in Harrison's system was relevant because Harrison's death was caused by money he owed a drug dealer.

■ Randle's collateral argument, which is that the evidence of cocaine found in Harrison's system was relevant to show drug use on the part of the State's witness, Gloria Cole, is also not preserved for review. The circuit court never ruled that the autopsy evidence could not be introduced for this purpose but said only that the evidence would be excluded "*unless* that matter is brought out or subject to impeaching some other witness as to what they were doing from time-to-time and whether or not they'd been involved with drugs or someone says that he was not a user." (Emphasis added.) At no time did Randle's defense counsel attempt to impeach any witness with this information. In fact, although defense counsel indirectly suggested in opening statement that Cole might have been on drugs at the time of the murder or during her testimony on the witness stand, he only once

attempted to question her on the subject, when he asked her the general question whether she used crack.[1]

When the circuit court sustained the State's objection to this question, Randle's counsel neither argued that the objection should be overruled nor proffered the testimony that he would have obtained if he had been allowed to pursue the question of Cole's mental state and ability to observe the murder. In sum, defense counsel failed to pursue even Cole's drug use, let alone the relevance of the cocaine in Harrison's system for impeaching Cole or any other witness. In addition, the substance of excluded testimony must be proffered or the exclusion will not be preserved for appeal. *Jones v. State*, 321 Ark. 649, 653, 907 S.W.2d 672, 674 (1995) ("It is well established that error may not be predicated upon a ruling which excludes evidence unless both a substantial right of the party is affected and the substance of the excluded evidence was made known to the trial court by offer of proof or was apparent from the context within which the questions were asked."); *see also* Ark. R. Evid. 103(a)(2) (2007). We agree again with the State that the collateral issue is not preserved for our review.

An examination of the record has been made in accordance with Ark. Sup. Ct. R. 4–3(h) and Ark. R. App. P.–Crim. 14, and it has been determined that there were no rulings adverse to Randle which constituted prejudicial error.

Affirmed.

---

[1] Although appellant in his brief on appeal does not directly challenge the circuit court's refusal to allow Randle's counsel to question Cole regarding her drug use, he does complain in his brief that Cole's drug use caused her to fabricate her testimony.