James E. PARROTT, As Father,
Next Friend and Guardian of
Jarrott PARROTT *v.* Mark MALLETT

77-99

558 S.W. 2d 152

Opinion delivered December 12, 1977
(Division II)

*Hodges, Hodges & Hodges,* by: *David Hodges,* for appellant.

*Hale, Hendricks, Thurman & Capps, P.A.,* and *John Biscoe Bingham,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant James Parrott brought this action for himself and as next friend and guardian of his minor son Jarrott for personal injuries to the son suffered in an automobile collision. A jury found that appellee was negligent and that his negligence was the sole proximate cause of Jarrott Parrott's injury. The jury awarded James Parrott damages of $700, but found that Jarrott was entitled to "0" damages. Appellant argues that the verdict was error, that the circuit court erred in denying a motion for new trial and that the judgment based on the verdict should be set aside and a new trial ordered. The basis of all the relief sought on appeal is the alleged error in the failure of the jury to award damages to Jarrott Parrott. We find no reversible error.

James Parrott's recovery in his own right is not involved, as the judgment in his favor has been paid. The damages sought on behalf of his son were for permanent partial disability past and future, pain and suffering, past and future mental anguish, loss of ability to earn, past and future, and hospital and medical expenses.

Jarrott Parrott testified that he blacked out at the time of the collision and when he regained consciousness, he was dizzy, his back was hurting and he had a knot on his head, but he did not figure there was much wrong with him on account of the wreck. He drove his car home but his mother took him to a hospital, where he was kept overnight after Dr. Lowery had said that he had suffered a minor concussion. He said that he continued to suffer headaches and such back pain that he had to sleep on the floor for about four months

because he could not sleep in a bed. He stated that he was still having to sleep on a hard bed. Jarrott later returned to Dr. Lowery for a checkup, but did not again see any doctor until he had been injured in a fight with his brother, during which he had been struck on the head by the brother at the same place he had been struck in the automobile collision. Jarrott then spent four days in the hospital. The hospital record showed that Jarrott complained of an injury to the head on this occasion. He went to work after this incident, first operating a sanding wheel and then painting, and had been continuously employed by the same employer until the date of the trial more than eight months later. He said that he could perform any function he had done before the injury, but that sometimes when he bent and lifted something, he suffered a pain in his back.

Admittedly, Jarrott told inquirers at the scene of the accident that he wasn't hurt, although he claimed that the knot on his head was plainly visible. He said that Dr. Lowery had prescribed some pills for back pain, but that he had never had the prescription refilled. James Parrott paid all his son's medical and hospital bills. He corroborated Jarrott's testimony about sleeping on the floor (for about two weeks, he said) and about having plywood under his mattress until Mrs. James Parrott had purchased a firm mattress for his bed. He also said he saw the bump over Jarrott's eye. James Parrott testified that Jarrott had missed no work on account of his back injury.

Jarrott's mother also said that she saw the knot on his head and that, when he seemed sleepy just after the collision, she took him to a doctor, who sent him to a hospital. She said that he had slept on the floor for two or three months, and, that on occasion, he slept on the floor even after he started sleeping on a firm mattress. She said he no longer had headaches and had seen no physician since his release from the second stay in the hospital.

Dr. Austin Grimes saw Jarrott more than a year following the automobile collision for the purpose of evaluating the injuries resulting from it. This doctor was told that Jarrott had experienced no trouble with his back until approximately one week after the incident. He found no objective evidence of

back injury, and nothing to corroborate Jarrott's complaints of pain, although the symptoms Jarrott described were consistent with an automobile accident of the type described by Jarrott. He said that, based on Jarrott's complaint, the permanent partial impairment suffered would be less than 5% — so minimal it was hard to put a figure on it.

Morris Mallett and a police officer who were at the scene of the collision shortly after it happened saw no bruises or lumps about Jarrott.

Appellant concedes that our inquiry must be confined to a determination whether appellant proved any pecuniary injury. See *House* v. *Finney*, 252 Ark. 66, 477 S.W. 2d 482. He argues that a new trial should have been granted because a pecuniary interest was established without contradiction. With this, we cannot agree. The jury could have found and apparently did find that appellant had not shown that Jarrott suffered pecuniary damage. There is no evidence that Jarrott spent one cent for medical expenses, or that he lost pay for a single moment on account of the injuries he suffered. Appellant says that the father, James Parrott, sued only to recover damages to his personal property, i.e., the automobile. If there were medical expenses incurred, they were paid by the father, who would have been entitled to recover them if he had sought recovery in this action.

We have long recognized that, in case of injury to a minor child, there are two separate and distinct causes of action: one in favor of the infant for his injuries and one in favor of the parent for losses suffered by the parent. *Sibley* v. *Ratliffe*, 50 Ark. 477, 8 S.W. 686. In *Lopez* v. *Waldrum Estate*, 249 Ark. 558, 460 S.W. 2d 61, we addressed ourselves to our holdings as to the elements of damage recoverable by each, pointing out that a suit by a father in behalf of his unemancipated minor child, is the child's cause of action, and not the father's, but that the parent is entitled to recover in his own right for expenses incurred and to be incurred by the parent on account of an injury to the child. We have not specifically stated that recovery cannot be had in an action on behalf of a minor child for medical expenses incurred and to be incurred during his minority, where he has not paid them and is not liable for them. By an overwhelming weight of authority, it is

held that no award for such damages may be made in an action brought on behalf of the child, where the child is unemancipated and not responsible for his own debts and has not paid the bill for such expenses. McCormack, Damages § 91, p. 329; 4 Sutherland on Damages (4th Ed.) 4737, § 1250; Annot., 37 ALR 11, 29, supplemented 32 ALR 2d 1060, 1069. Still, there is implicit recognition of the rule, which is really only an application of the principle stated in *Sibley*, in Arkansas cases cited in the annotations to which we have referred. See also, Comment AMI, Civil (2d), 2213.

Appellant errs in asserting that our review is directed toward determining whether the verdict was against the preponderance of the evidence and that, if we find that it was, the circuit judge abused his discretion in denying his motion for new trial. The question of preponderance was for the trial judge, and we will not reverse unless there was no substantial evidence to support the submission of the disputed question to the jury. *Louisiana & A. Ry. Co.* v. *O'Steen*, 194 Ark. 1125, 110 S.W. 2d 488; *St. Louis-San Francisco Ry. Co.* v. *Porter*, 199 Ark. 133, 134 S.W. 2d 546; *Baldwin* v. *Wingfield*, 191 Ark. 129, 85 S.W. 2d 689.

Since Jarrott Parrott showed no right to recover any pecuniary damages which were subject to accurate measurement, and since we cannot say that there was no substantial evidence to support the jury verdict that he was not entitled to recover any damages, the judgment is affirmed.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.