Jeff D. McMASTER and Sharon McMASTER *v.*
McILROY BANK, Trustee of the Donald W. STANTON
Retirement Trust, and Donald W. STANTON

CA 82-287                                     654 S.W.2d 591

Court of Appeals of Arkansas
Opinion delivered July 6, 1983
[Rehearing denied August 24, 1983.*]

---

*Mayfield, C.J., and Cooper, J., would grant rehearing.

*F. H. Martin,* for appellants.

*Davis, Cox & Wright,* by: *William Jackson Butt, II,* for appellees.

LAWSON CLONINGER, Judge. In this case, appellees were awarded damages against appellants for the breach of a real estate sales contract. The trial court without a jury found that appellants had breached the contract by refusing to purchase the real estate, and held that appellees were entitled to recover as damages the difference between the contract price and the value of the property as of the date the contract was to be performed.

Appellants contend that the trial court committed error (1) when it allowed the addition of a new party plaintiff after the original plaintiff had rested his case, (2) by not following the liquidated damages provision in the contract, and (3) by using the wrong measure of damages.

When we view the evidence in the light most favorable to appellees, we find no reversible error by the trial court and we affirm.

Appellant, Jeff D. McMaster, is a veterinarian. In February, 1979 he sold his practice in Fayetteville, Arkansas, along with the entire lot upon which his office building was situated, to appellee Donald W. Stanton, also a veterinarian, for the sum of $175,000. A deed was executed by appellants on February 15, 1979 to "McIlroy Bank & Trust, Trustee for Donald W. Stanton, Profit Sharing Trust," and simultaneously, appellants agreed to buy back the west one-half of the lot one year later for the sum of $35,000. The building was on the east half of the lot; the west half, which was behind the building, being vacant.

The buy-back agreement contained the following provision:

Buyer herewith tenders $2,500 as earnest money, to become part of purchase price upon acceptance. This sum shall be held by Agent and if offer is not accepted or if title requirements are not fulfilled, it shall be promptly returned to Buyer. If, after acceptance, Buyer fails to fulfill his obligations, the earnest money may become liquidated damages, which fact shall not preclude Seller or Agent from asserting other legal rights which they may have because of such breach.

Subsequent to the execution of the buy-back agreement, appellants discovered that there were problems with the west one-half of the lot concerning ingress and egress, and appellants refused to accept a deed to the property or to pay the purchase price. Appellees initially filed an action in chancery court asking for specific performance, or in the alternative for rescission, or in the alternative for damages. The complaint was later amended to request damages for breach of contract only, and the case was transferred to circuit court.

Appellants' first point for reversal is that the trial court erred in allowing the addition of a new party plaintiff after

the original plaintiff had rested his case. The complaint was initially filed by Donald W. Stanton as trustee of the Donald W. Stanton Retirement Trust. Title to the real estate was held by McIlroy Bank & Trust, trustee of the Donald W. Stanton Profit Sharing Trust. After the initial plaintiff rested his case, appellants moved for a directed verdict on the ground that Stanton was not the real party in interest. The trial court under Rule 17, Arkansas Rules of Civil Procedure, overruled the motion and directed that the co-trustee, appellee McIlroy Bank & Trust, be made a party plaintiff. The evidence shows without contradiction that Dr. Stanton's actions as trustee were acknowledged, confirmed and ratified by McIlroy Bank as co-trustee, from the point of the execution of the contract through the prosecution of the suit.

As the trial court pointed out, this case falls directly within the purview of Rule 17, Arkansas Rules of Civil Procedure, which provides that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by or joinder or substitution of the real party in interest, and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest. We find no merit to appellants' contention.

Appellants' second point for reversal is that the trial court erred by not following the contract provisions calling for liquidated damages.

The general rule pertaining to liquidated damages is that an agreement in advance of breach will be enforced if the sum named is a reasonable forecast of just compensation for the injury, or if the harm is difficult or incapable of accurate estimation. *Phillips* v. *Ben M. Hogan Company,* 267 Ark. 1104, 594 S.W.2d 39 (1980). This court reviewed a similar liquidated damages provision in the case of *Hearrell* v. *Rogers,* 7 Ark. App. 230, 646 S.W.2d 703 (1983). The only difference in *Hearrell* and the instant case was that in *Hearrell* the liquidated damages clause provided that the

earnest money "shall" become liquidated damages, whereas in the instant case, the clause provides that the earnest money "may" become liquidated damages. In *Hearrell,* we held that by the terms of the parties' agreement, the appellant could have sought to enforce the agreement rather than sue for damages. However, because appellant there brought an action to seek damages, we upheld the trial court's decision in enforcing the liquidated damages provision.

The Arkansas Supreme Court has held that the word "may" is usually employed as implying permissive or discretional, rather than mandatory, action or conduct, and is construed in a permissive sense unless necessary to give effect to an intent to which it is used. *Dunn* v. *Dunn,* 222 Ark. 85, 257 S.W.2d 283 (1953). We hold that within the context in which the word "may" is here employed, it implies permissive or discretional action on the part of appellees.

A "shall" provision for liquidated damages gives the party who does not breach the contract only one option; he can sue for specific performance, but he cannot sue for actual damages; the figure stipulated is the only option he has for damages. The "may" provision gives the party who does not breach the added option of suing for actual damages or for the liquidated damages provided for. The trial judge was correct in determining that it was not mandatory for appellees to sue for specific performance or for the amount of liquidated damages provided for. Appellees had the added option of suing for actual damages.

Appellants' third point for reversal is that the trial court erred by using the wrong measure of damages. Appellant concedes that the proper measure of damages in most instances is the amount equal to the difference between the contract price and the fair market value of the property as of the date of performance of the contract. See *McGregor* v. *Nichols,* 153 Ark. 128, 239 S.W. 736 (1922); *Hearrell* v. *Rogers, supra.* However, appellant argues that the testimony at trial indicated that both appellees' and appellants' expert witnesses agreed that the property was worth con-

siderably more to appellees because of the access he had to the property.

Appellants' expert witness testified that the west half of the lot had a value of $32,700 to appellees, and set the market value at $18,700 to anyone not owning an adjacent lot.

Appellees' expert witness testified that the property was essentially without access. He set the market value at $10,000, but testified that if access could be obtained, the property would have a value of $30,250. His appraisal did not consider the value of the entire lot under one ownership.

The trial judge fixed the market value of the west half of the lot at $16,500 as of February 15, 1980, the date the contract was to be performed, and awarded judgment to appellees for the difference in the contract price, $35,000, and the market value.

Clearly, the award places the appellees in a better position than they would have been had the contract been performed. They are allowed to retain the property and to receive compensation on the basis of the market value of the property. Appellees, however, as owners of the east half of the lot and already having rejected an offer to purchase the entire lot, are not willing buyers of the vacant west half of the lot. The expert witnesses agreed on the correct definition of fair market value which contemplates a willing buyer and a willing seller.

When appellants and appellees began their negotiations, appellants wanted to sell their entire interest in the lot, the building, and the veterinary practice for $175,000. Appellees were not willing buyers for the west half of the lot except on the unique condition that appellants agreed to purchase back that half of the lot for $35,000 a year later.

Our research has disclosed no case, nor have appellants cited any case, where, in ascertaining damages, a jury or trial court is to look to the value which a parcel of property has specifically to the owner. If the fair market value of the particular piece of property in question is ascertainable, that

is the measure in this jurisdiction. The trial judge, from the conflicting evidence presented by the parties and their witnesses, ascertained the market value to be $16,500, and that finding was not clearly against the preponderance of the evidence.

The judgment is affirmed.

MAYFIELD, C.J., and COOPER, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. I dissent. The appellees sold the back half of the lot for $35,000, but the appellants have refused to make the payment. Since the appellees own the front half, they have access to the back half, and their own expert witness says the value of the back half with access is $30,250. We, however, are allowing appellees to keep the $30,250 piece of property, keep the $2,500 down payment they got when they sold the property, and keep a judgment for $16,000. No wonder the majority says the appellees are in a better position than they would have been if the appellants had paid them the $35,000 and taken the property.

But as wrong as that is, the real problem is that the parties agreed in advance that if the appellants refused to pay the balance of the purchase price the appellees could keep the $2,500 down payment as liquidated damages. In my opinion, there is simply no such thing as *optional* liquidated damages. If damages are optional, they are not liquidated.

If the appellees were not satisfied with the liquidated damages for which they contracted, they could have sought to enforce the contract which is one of the "other" rights their contract provided they might assert. *See Hearrell* v. *Rogers*, 7 Ark. App. 230, 646 S.W.2d 703 (1983). As a matter of fact, that is what the appellees originally asked for in this case. They would have been entitled to specific performance or they would have been entitled to liquidated damages, but they are not entitled to what they got.

COOPER, J., joins in this dissent.