Cite as 2026 Ark. App. 48

# ARKANSAS COURT OF APPEALS
DIVISION I

No. CV-24-131

| | |
|---|---|
| LESTER BUCKLEY SMITH<br>        APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>VINCE EASTWOOD, AS PARENT AND<br>NEXT FRIEND OF TWO MINOR<br>CHILDREN<br>        APPELLEE/CROSS-APPELLANT | Opinion Delivered January 28, 2026<br><br>APPEAL FROM THE CARROLL<br>COUNTY CIRCUIT COURT,<br>EASTERN DISTRICT<br>[NO. 08ECV-21-122]<br><br>HONORABLE SCOTT JACKSON,<br>JUDGE<br><br>AFFIRMED ON DIRECT APPEAL;<br>REVERSED AND REMANDED ON<br>CROSS-APPEAL |

**ROBERT J. GLADWIN, Judge**

The appellant in this case was sued by his victim after he pled guilty to sexually abusing her. The circuit court granted the appellee's motion for summary judgment on liability, and the jury then awarded him $1.6 million in damages. The appellant has appealed the order granting summary judgment and certain rulings made during trial. The appellee cross-appealed the circuit court's denial of his motion for attorney fees.

We affirm on direct appeal and reverse and remand on cross-appeal.

I. *Background*

In 2019, Lester Smith (Smith) sexually abused MC1, who attended the church where Smith was a seventy-four-year-old Sunday-school superintendent. MC1 was thirteen.

On February 27, 2020, a criminal information was filed against Smith for second-degree sexual assault in violation of Arkansas Code Annotated section 5-14-125(a)(3) (Supp. 2019). Smith later pled guilty to fourth-degree sexual assault in violation of Arkansas Code Annotated section 5-14-127(a)(1)(B) (Supp. 2019).

During the plea hearing, Smith testified that he was guilty of the following:

[O]n or between March the 20th, 2019, and June the 21st, 2019, being at the time 20 years of age or older, Lester Buckley Smith did engage in sexual contact with another person, to wit the juvenile [MC1], who was at that time less than 16 years of age and not Lester Smith's spouse.

On October 8, 2021, MC1's father, Vince Eastwood (Eastwood), filed a lawsuit against Smith on behalf of MC1 and her sibling, MC2. The complaint alleged that the abuse against MC1 started in the fall of 2018 when she was thirteen. The complaint also alleged that Smith sexually abused MC2 when she was twelve. Eastwood brought claims on behalf of both children for outrage, civil action by a crime victim, and civil action for vulnerable victims of sexual abuse.

As the litigation progressed, Eastwood moved for partial summary judgment on the issue of liability for all counts as to MC1 because Smith had pled guilty to sexually abusing her. The circuit court held a hearing then, on January 6, 2023, granted the motion for partial summary judgment. A two-day jury trial followed in October. The trial was for damages as to MC1 and liability and damages as to MC2 The jury found that Smith was not liable to MC2. As to MC1, the jury awarded $100,000 for past and future medical bills; $500,000 for pain, suffering, and mental anguish; and $1 million in punitive damages.

Eastwood moved for attorneys' fees pursuant to Arkansas Code Annotated section 16-118-107 (Repl. 2016) the day after judgment was entered. The circuit court denied that motion.

## II. *Direct Appeal*

We now turn to Smith's issues on appeal. He argues that the circuit court erred in granting partial summary judgment, in denying his motion for directed verdict, and in the format of the verdict form.

## A. Partial Summary Judgment on Liability

The standard of review for a summary-judgment order is well settled. A circuit court should grant summary judgment only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law *Marziale v. Brown*, 2025 Ark. App. 468, at 6, 723 S.W.3d 641, 645. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* The court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* This review focuses not only on the pleadings but also on the affidavits and documents filed by the parties.

## 1. *Tort of outrage*

The tort of outrage has four elements: (1) the defendant intended to inflict emotional distress or should have recognized emotional distress as a likely result of his conduct; (2) the defendant's conduct was extreme, outrageous, and utterly intolerable in a civilized community; (3) the defendant's actions caused anguish or distress to the plaintiff; and (4) the emotional distress suffered was severe and of a type that no reasonable person should be expected to endure. *Mary C. Petty Fam. Tr. v. Louton*, 2019 Ark. App. 590, at 2, 591 S.W.3d 393, 394.

The first two elements are at issue in this appeal. Although Smith attempts to raise points about elements three and four, he did not do so until his reply brief, and this court does not consider arguments made for the first time on reply. *Orintas v. Point Lookout Prop. Owners Ass'n Bd. of Dirs.*, 2015 Ark. App. 648, at 2–3, 476 S.W.3d 174, 176.

Smith's first argument is that Eastwood did not prove that Smith knew or should have known that emotional distress was a likely result of his conduct. This argument is absurd. Smith admitted under oath that he, a seventy-three-year-old Sunday-school superintendent, had sexual contact with a thirteen-year-old church member. This is an undisputed fact. Smith did not meet proof with proof by presenting evidence that he had any sort of impairment that would render him incapable of understanding that emotional distress was a likely result of this conduct. The undisputed facts here clearly meet the first element, even though the courts take "strict approach and give a narrow view to the tort of outrage." *Croom v. Younts*, 323 Ark. 95, 102, 913 S.W.2d 283, 287 (1996).

4

Smith argues that his state of mind should have been left to the jury. However, the supreme court held in *Croom*, which is a sexual-abuse case, that a tortfeasor's intent to cause emotional distress is not required. Instead, outrage "includes willful and wanton conduct which embraces activity in which a person knows or should know in light of surrounding circumstances that his actions will naturally and probably result in emotional distress." *Id.* Smith has presented no facts or evidence that would establish that he should not have known his conduct would naturally and probably result in the emotional distress of his victim.

Smith's second argument regarding outrage is similarly ridiculous. He asks this court to reverse the partial summary judgment on the outrage claim, arguing that Eastwood did not submit proof showing that the conduct was extreme, outrageous, and utterly intolerable in a civilized community.

While Smith correctly notes that simply describing conduct as outrageous does not make it so, that is not at all what happened in this case. It is undisputed that Smith admitted under oath that he had sexual contact with MC1 when she was thirteen. He was a church elder, and she was a parishioner. The supreme court has held that an adult woman may sue her doctor for outrage when the doctor improperly touched or "fondled" her breasts, even though the alleged conduct happened only one time. *McQuay v. Guntharp*, 331 Ark. 466, 476, 963 S.W.2d 583, 588 (1998). *McQuay* involved a motion to dismiss, but in reversing the dismissal, the supreme court implicitly acknowledged that if the facts were proved, then sexual contact by a person in a position of trust could give rise to the tort of outrage. In other words, such contact is outrageous and utterly intolerable in a civilized society. Here, not only

5

was there a relationship of trust, but the victim was a child. These undisputed facts are utterly intolerable in a civilized community. Smith's own unsupported assertion that his conduct was not outrageous does not qualify as meeting proof with proof.

For these reasons, we affirm the grant of partial summary judgment on the outrage claim.

## 2. *Victim of a felony*

The second claim on which Eastwood was granted partial summary judgment was under Arkansas Code Annotated section 16-118-107. That statute provides:

> (a)(1) Any person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law may file a civil action to recover damages based on the conduct.
>
> (2) The burden of proof for showing conduct that constituted a felony shall be a preponderance of the evidence.
>
> (3) If the person who is injured or damaged prevails, he or she shall be entitled to recover costs and attorney's fees.

Ark. Code Ann. § 16-118-107 (Repl. 2016).

Smith argues that (1) the circuit court did not make any findings of fact that would constitute a felony, and (2) he only pled guilty to a misdemeanor.

First, the circuit court was not required to make factual findings. Ark. R. Civ. P. 52 (2025); *Carter v. Entergy Ark., Inc.*, 2024 Ark. App. 573, at 12, 701 S.W.3d 789, 797. But even if it were, the circuit court did so. It found that Smith had testified during his plea hearing that "between March 20, 2019, and June 21, 2019, being at the time over 20 years of age or older, Lester Smith did engage in sexual contact with another person, to-wit, the juvenile

6

MC1 who was at that time less than 16 years of age and [not] Lester Smith's spouse." The circuit court did not state in the summary-judgment order that MC1 was thirteen at the time of the sexual assault, but the ruling was based on the pleadings and arguments of counsel. The motion for partial summary judgment included an affidavit establishing MC1's birth date, and from that, one can see she was thirteen at the time of the conduct.

It is true that Smith pled guilty to a misdemeanor under Arkansas Code Annotated section 5-14-127(a)(1)(B), which applies to an adult having sexual contact with a person under the age of sixteen. However, it is a Class B felony when an adult has sexual contact with a child under the age of fourteen. Ark. Code Ann. § 5-14-125(a)(3), (b)(1). Smith admitted the dates during which he committed the sexual contact, and it is undisputed that MC1 was thirteen on those dates. The tort statute does not require that the tortfeasor be found guilty of a felony in a criminal action. In fact, section 16-118-107(a)(2) sets out an entirely different burden of proof than what would be required in a criminal conviction. It is clear from the plain language of the statute that Eastwood does not have to prove that Smith was convicted of a felony in order to prove liability under section 16-118-107. It requires only that Smith committed felonious conduct.

The undisputed facts show that Smith committed a felony against MC1, and he has not met proof with proof to disprove that. For these reasons, we affirm summary judgment on liability for the claim under section 16-118-107.

## 3. *Vulnerable Victims of Sexual Abuse Act*

Smith next contends that the circuit court should not have granted Eastwood's motion for partial summary judgment with regard to the claim under the Vulnerable Victims of Sexual Abuse Act, codified at Arkansas Code Annotated section 16-118-118 (Vulnerable Victims Act). That statute was passed in 2021 and states, "[A] vulnerable victim may bring a civil action against any party who committed sexual abuse against the vulnerable victim or whose tortious conduct caused the vulnerable victim to be a victim of sexual abuse." Ark. Code Ann. § 16-118-118(b)(1) (Supp. 2023). A minor is a vulnerable victim, and sexual abuse includes "unlawful sexual contact with a vulnerable victim" and sexual assault in the second degree. Ark. Code Ann. § 16-118-118(a)(3)(C), (H); *Id.* § 16-118-118(a)(6).

The Vulnerable Victims Act explicitly bars lawsuits involving "a claim that has been litigated to finality on the merits in any court of competent jurisdiction before July 28, 2021." Ark. Code Ann. § 16-118-118(c).

As to liability under the Vulnerable Victims Act, Smith first argues that any finding of "sexual abuse" under the statute must be made using the criminal standard of proof. Smith did not make this argument to the circuit court, so it is not preserved for appeal. *See Little Rock Sch. Dist. v. Hart*, 2025 Ark. App. 529, at 2, __ S.W.3d __, __.

Smith also attempts to argue that the Vulnerable Victims Act is an unconstitutional ex post facto law. Although Smith made this argument below in a motion to dismiss, the circuit court never ruled on the issue. Instead, the circuit court denied Smith's motion to dismiss in part, but "reserve[d] judgment" on Smith's arguments about the constitutionality

8

of the Vulnerable Victims Act. The circuit court never revisited or ruled on the remaining issues in the motion to dismiss or Smith's ex post facto argument. "The appellant has the burden to obtain a ruling on an issue in order to preserve the issue for appeal." *Lockard & Williams Ins. Servs., Inc. v. Waldrip*, 2020 Ark. App. 274, at 5, 600 S.W.3d 662, 665. Accordingly, we cannot reach the merits of this issue.

Finally, Smith argues that Eastwood's claims had been previously litigated in his criminal trial; therefore, the suit was barred by section 16-118-118(c). This contention is based on the sentence in the circuit court's order that stated, "This court finds that the case of State of Arkansas vs. Lester Buckley Smith, Case No. 08CR-2020-37, was litigated by the acceptance of Mr. Smith's plea of guilty."

This argument fails for two reasons. First, Smith argued extensively in his response to the motion for partial summary judgment that his criminal case had *not* been fully litigated. He now argues before this court that the matter was fully litigated. "A litigant is not permitted to assume wholly inconsistent positions on the same issue in the same case." *Parsons Dispatch, Inc. v. John J. Jerue Truck Broker, Inc.*, 89 Ark. App. 25, 31, 199 S.W.3d 686, 690 (2004).

Further, and to the merits of the argument—the circuit court was clearly remarking on Smith's criminal case. This civil case is separate. The circuit court did not state that the civil case for Smith's conduct was litigated. It is obvious that section 16-118-118(c) is referencing previous civil litigation. It would make no sense otherwise, as committing criminal sexual assault is one definition of "sexual abuse" under section 16-118-118.

For these reasons, we affirm the circuit court's grant of partial summary judgment on Eastwood's claim under the Vulnerable Victims Act.

## B. Denial of Directed-Verdict Motion

Smith's next point on appeal is that the circuit court erred in denying his directed-verdict motion on the bases that Eastwood was not the real party in interest and that MC1 was not the party who incurred medical expenses.

### 1. *Real party in interest*

MC1 was a minor when Smith committed the crime against her. She was also a minor when the lawsuit was filed. Vince Eastwood is MC1's father and properly filed the lawsuit as MC1's parent and next friend as required by Arkansas Rule of Civil Procedure 17. MC1 filed an affidavit with the partial motion for summary judgment that contained her exact birth date, which is September 1, 2005. This was filed on June 13, 2022, also when MC1 was still a minor. This series of events establishes that all the parties and attorneys in the case knew or should have known when MC1 was due to turn eighteen—September 1, 2023. The motion for partial summary judgment establishing liability was granted on January 6, 2023, also while MC1 was still a minor. There is no question that Eastwood was the proper plaintiff at that time. MC1 was actively involved in the litigation through its pendency.

Smith did not object to Eastwood's continuing to pursue the case on September 2, 2023, or any time before trial started. The trial started on October 24, which was only fifty-three days after MC1 turned eighteen. Smith also did not object during the plaintiff's case-in-chief. Instead, he waited until the close of the plaintiff's case at trial to make a directed-

verdict motion that MC1 was the proper party in interest instead of Eastwood. At that time, the circuit court conformed the pleadings to the evidence presented at trial and denied the directed-verdict motion.

The jury forms asked the jurors to assess "the amount of damages you find that [MC1] has sustained" for medical treatment, pain and suffering, and punitive damages. The judgment also states that "[MC1] is hereby awarded judgment in the amount of $100,000.00 for past and future medical expenses, $500,000.00 for past and future pain and suffering and mental anguish, and $1,000,000.00 in punitive damages[.]"

Arkansas Rule of Civil Procedure 17(a) addresses real parties in interest. It mandates that "[e]very action shall be prosecuted in the name of the real party in interest." However, Rule 17(a) goes on to state,

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Ark. R. Civ. P. 17(a).

The real party in interest "is considered to be the person or corporation who can discharge the claim on which the allegation is based, not necessarily the person ultimately entitled to the benefit of any recovery." *St. Paul Mercury Ins. Co. v. Cir. Ct. of Craighead Cnty.*, 348 Ark. 197, 206, 73 S.W.3d 584, 589 (2002).

11

The case of *White v. Welsh*, 327 Ark. 465, 939 S.W.2d 299 (1997), is instructive. In *White*, Martin Hardcastle owned land that could be accessed only by a road over Jack McPherson's property. Hardcastle died, and Evelyn Welsh was appointed personal representative. McPherson sold his land to Sharon and Hubert White, who locked the gates across the roadway, preventing access to the Hardcastle land. The "Hardcastle Estate" filed suit against the Whites. Almost a year later, the chancery court entered an order substituting Welsh, personal representative of the Estate, as the plaintiff. The Whites moved to dismiss Welsh, arguing that she had no standing. The chancery court then gave Welsh twenty days to file an amended complaint, which she did timely. After a trial, the Whites appealed, arguing that the chancery court erred in allowing Welsh to be substituted as a plaintiff. They claimed that the original complaint was void because it was filed by "the Hardcastle Estate," which the Whites argued was a legal nonentity. They further alleged that Welsh had no standing because she failed to show title or ownership in the easement. The supreme court held that Welsh did have a property interest because once the court finds that an estate's property should be sold, the "real property shall be an asset in the hands of the personal representative." *Id.* at 468, 939 S.W.2d at 300. The supreme court went on to hold that Welsh was properly and timely substituted as a plaintiff, even though she did not have a "personal interest" until after the complaint was filed and after she had amended the complaint. *Id.* at 468, 939 S.W.2d at 301.

In so holding, the court relied on Rule 17(a), which allows a "reasonable time" for the real party in interest to be substituted once an objection is made. "What constitutes a

reasonable time under Rule 17 is a matter of judicial discretion and will depend upon the facts of each case." *Id.* Here, the substitution was made immediately—Eastwood moved to conform the pleadings to the proof presented, and the circuit court granted that motion. The jury was asked to determine what damages MC1 was owed, and the judgment reflected that. This case is even more compelling than *White* because, here, the original complaint was filed by the proper party. Liability was determined while MC1 was a minor. She was then substituted shortly after turning eighteen and right after Smith objected.

In another similar case, this court rejected an appellant's argument that the circuit court erred "in allowing the addition of a new party plaintiff after the original plaintiff had rested his case." *McMaster v. McIlroy Bank*, 9 Ark. App. 124, 126–27, 654 S.W.2d 591, 593 (1983). Just as in this case, the defendant in *McMaster* moved for a directed verdict after the plaintiff rested, alleging that the named plaintiff was not the correct party in interest. The circuit court "overruled the motion and directed that [a different party] be made a party plaintiff." *Id.* That is exactly what happened in this case. As in *McMaster*, there is no error because "[t]he evidence shows without contradiction" that Eastwood's actions in filing and continuing to pursue the lawsuit were "confirmed and ratified" by MC1. *Id.*

Smith incorrectly relies on *Chavis v. Brackenbury*, 375 Ark. 457, 291 S.W.3d 570 (2009). *Chavis* concerned a minor's bank account that became the center of a feud between parents. In *Chavis*, an ex-wife was the custodian of two bank accounts established in the child's name. The ex-husband filed a lawsuit for an accounting of the funds in the bank accounts and requested that the ex-wife be ordered to repay the funds to the bank accounts.

13

The "child" whose name was on the accounts turned eighteen several months after the lawsuit was filed. *Id.* at 459, 291 S.W.3d at 571. The ex-wife filed a motion to dismiss or substitute parties because the child had reached the age of majority. The circuit court granted the motion to dismiss, reasoning that a necessary party was not before the court and that, "even if the request for an accounting was granted, the person entitled to receive any funds . . . was not before the court." *Id.* The arguments on appeal were that the "child" was actually still a minor under a banking law and that a certain statute allows a minor's parent to petition the court for an accounting. The appeal had nothing to do with the real party in interest. Even so, the supreme court did not reach the merits of any argument on appeal because none of the arguments had been presented to the circuit court. *Id.* at 461, 291 S.W.3d at 573. The issues on appeal in *Chavis* do not appear to relate to this case at all, but even if they did, the supreme court certainly did not make any holdings that are applicable to this case.

### 2. *Medical expenses*

Smith next argues that his motion for directed verdict should have been granted because the medical expenses were incurred by Eastwood rather than by MC1 herself. It is true that "in case of injury to a minor child, there are two separate and distinct causes of action: one in favor of the infant for his injuries and one in favor of the parent for losses suffered by the parent." *Parrott v. Mallett*, 262 Ark. 525, 528, 558 S.W.2d 152, 153 (1977). As the *Parrott* court held, a child cannot recover for the actual medical expenses incurred and paid by his parents *during his minority*. *Id.* That is completely different from the jury's award in this case. Here, the jury was asked to:

14

State the amount of damages you find that [*MC1*] *sustained* for the reasonable expense of any necessary medical care, treatment, and services received including transportation and board and lodging expenses necessarily incurred in securing such care, treatment, or services *and the present value of such expense reasonably certain to be required in the future*.

(Emphasis added.) The jury returned a verdict for damages of $100,000 in response. The therapy bills that had been entered into evidence totaled $8,650, so clearly the damages award was not tied to the total of those bills. The jury was not asked on the verdict form to take into account the bills that had been paid by MC1's parents, and it specifically asked about future medical expenses.

This court will affirm the denial of a directed-verdict motion if there was substantial evidence for the jury's verdict. *Hope Med. Park Hosp. v. Varner*, 2019 Ark. App. 82, 568 S.W.3d 818.

MC1 testified that she continues to suffer from PTSD. She stated, "I have to deal with the effects of what happened to me for the rest of my life." Her therapist testified that MC1 "will need a lifetime of counseling." He also said that MC1 suffered from many mental-health issues stemming from the abuse, including "depressive symptoms, there's trust, there's anxiety, there's social anxiety, and all of these, I think, require their own work therapeutically." Smith presented no evidence refuting any of this. Considering the testimony of MC1 and her therapist, there was substantial evidence for the jury's award of damages.

For these reasons, we affirm the circuit court's denial of Smith's directed-verdict motion.

## C. Verdict Form

Smith's final argument on appeal is that the circuit court erred in the way it divided the measure of damages on the verdict form. The jury was asked to fill out a verdict form with interrogatories. The interrogatories related to MC1 were as follows:

> 1. State the amount of damages you find that [MC1] sustained for the reasonable expense of any necessary medical care, treatment, and services received including transportation and board and lodging expenses necessarily incurred in securing such care, treatment, or services and the present value of such expense reasonably certain to be required in the future.
>
> 2. State the amount of damages you find that [MC1] has sustained for any pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future.
>
> 3. State the amount of punitive damages, if any, you award to [MC1].

The jury awarded $100,000 for past and future medical expenses; $500,000 for pain and suffering; and $1 million for punitive damages.

Smith contends that the different claims entitled MC1 to different amounts of damages, so the jury should have been tasked with awarding damages on each count rather than for each measure of damages. For example, he argues that it is impossible to tell whether the jury was awarding punitive damages for outrage or under the Vulnerable Victims Act.

The circuit court has discretion regarding whether to submit a verdict on interrogatories, and the appellant must demonstrate reversible error for this court to reverse such a decision. *Builders Transp. Co. v. Smith*, 2024 Ark. App. 561, at 17, 701 S.W.3d 22, 33–34.

16

Importantly, Smith does not argue that Eastwood was not entitled to any individual element of damages on the verdict forms. Nor does he argue that the jury got any element wrong. Instead, he argues that the jury should have had to assess punitive and compensatory damages separately under each count for which he was liable. Smith does not cite any statute, rule, or case to support his contention that the jury should have been given a different form. He states only that it is impossible to determine which count the jury awarded punitive damages for. However, at the end of the day, MC1 was entitled to punitive damages, and the jury determined the amount. Smith has not made any showing of reversible error.

Therefore, the circuit court did not abuse its discretion in the format of the verdict form.

On the basis of the above discussion, we affirm on direct appeal.

### III. *Cross-Appeal*

Eastwood brings a cross-appeal with one issue: the circuit court erred when it denied his posttrial motion for attorney's fees.

Victims of certain crimes can file a civil suit under Arkansas Code Annotated section 16-118-107. As discussed above, MC1 was entitled to partial summary judgment as to liability under this statute.

The statute provides, "If the person who is injured or damaged prevails, he or she shall be entitled to recover costs and attorney's fees." Ark. Code Ann. § 16-118-107(a)(3). Arkansas Rule of Civil Procedure 54(e)(2) requires that a motion for attorney's fees be filed within fourteen days of the entry of judgment. In this case, Eastwood filed the motion for

17

attorney's fees the day after the entry of judgment. The circuit court denied the motion, stating simply, "Plaintiff's motion for attorney's fees is denied."

Eastwood's argument on appeal is that the circuit court erred because the plain language of section 16-118-107(a)(3) entitles a successful plaintiff to attorney's fees.

The decision to grant attorney's fees is within the sound discretion of the circuit court and will not be set aside absent an abuse of that discretion. *Harris v. City of Fort Smith*, 366 Ark. 277, 280, 234 S.W.3d 875, 878 (2006).

"Attorney's fees are not allowed except when expressly provided for by statute." *Thomason Invs., LLC v. Huddleston*, 2020 Ark. App. 500, at 26, 613 S.W.3d 729, 745. Certain statutes, such as Arkansas Code Annotated section 16-22-308 (Repl. 1999), contain permissive language. Under that statute, "the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs" in breach-of-contract cases and certain other actions. Ark. Code Ann. § 16-22-308. The appellate courts have held that a circuit court is not required to award attorney's fees when the statute contains such permissive language. *See, e.g.*, *Conway Com. Warehousing, LLC v. FedEx Freight E., Inc.*, 2011 Ark. App. 51, at 9, 381 S.W.3d 94, 100 (noting that in the context of § 16-22-308, "[a] trial court is not required to award attorney fees . . . and any amounts awarded are discretionary"). Unlike section 16-22-308, the statute at issue in this case does not contain any permissive language.

Our rules about statutory construction are clear. When determining a statute's meaning, "we construe it just as it reads, giving the words their ordinary and usually accepted

meaning in common language. We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible." *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 222, 289 S.W.3d 466, 472 (2008). The word "shall" is considered mandatory. *Middleton v. Lockhart*, 344 Ark. 572, 584, 43 S.W.3d 113, 122 (2001). In *Middleton*, for example, the supreme court reversed and remanded a circuit court's order that taxed an attorney's-fee award to the defendant when the relevant statute stated that reasonable fees "shall be allowed" and taxed to the plaintiff. The statute at issue in that case was Arkansas Code Annotated section 16-61-109.

Further, this court has reversed a circuit court's denial of a motion for attorney's fees when the parties had entered into "a written contract that specifically provides for the entitlement to certain fees incurred in the enforcement of the contract[.]" *Dye v. Precision Found. Specialties & Flow Rite Drainage Sols., Inc.*, 2022 Ark. App. 220, at 25, 646 S.W.3d 168, 183. In such instances, appellate courts have interpreted "the word 'shall' to indicate mandatory compliance unless compliance would result in an absurdity." *Id.* The contract in *Dye* stated, "Client [the Dyes] will reimburse PFS, Inc. for all time spent and expenses (including fees of any attorney, collection agency, and/or court costs) incurred in connection with collecting any delinquent account." *Id.* at 25–26, 646 S.W.3d at 183. In *Dye*, this court reversed the denial of attorney's fees and remanded to the circuit court "to award PFS attorney's fees pursuant to the terms of the contract." *Id.* at 27, 646 S.W.3d at 184.

There is no question that Eastwood, as next friend of MC1, prevailed as required by section 16-118-107(a)(3).[1] The plain language of the statute states that if the person who is injured or damaged prevails, then he or she "shall" recover attorney's fees. Therefore, the circuit court abused its discretion in denying Eastwood's motion for attorney fees.

Therefore, the order denying Eastwood's motion for attorney fees is reversed, and remanded for proceedings consistent with this opinion.

IV. *Conclusion*

We affirm the circuit court's orders on direct appeal and reverse and remand on cross-appeal.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

ABRAMSON and BARRETT, JJ., agree.

*Story Law Firm, PLLC*, by: *Travis W. Story*, for appellant/cross-appellee.

*Horton Law Firm*, by: *T.J. Fosko*, for appellee/cross-appellant.

---

[1]Smith did not argue that Eastwood was not "the person who is injured or damaged." Further, MC1 could not bring the lawsuit in her own name when it was filed because she was a minor. Liability was determined when she was a minor.